## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br><br>**Ricky Vee Mitchell and Brock R. Mitchell,**<br><br>**Debtors.** | **Bankruptcy Case No. 18-40736-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

R. Fred Cooper, Idaho Falls, Idaho, Attorney for Debtors.

Julian E. Gabiola, HAWLEY TROXELL ENNIS & HAWLEY LLP, Pocatello, Idaho, Attorney for Debtor Brock R. Mitchell.

Michael F. Lutz, THE SPENCE LAW FIRM, LLC, Jackson, WY, Attorney for Creditor Patrick W. Smith.

### *Introduction*

Before the Court are two discovery motions.  The first is a motion to quash the subpoena for a Rule[1] 2004 examination to Eastern Idaho Regional Medical Center

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION − 1

("EIRMC").  Dkt. No. 30.  The second is a motion for Rule 2004 examinations and document production subpoenas.  Dkt. No. 34.  The parties stipulated to have these two motions decided by the Court on the briefing provided and without oral argument, which stipulation the Court granted.  Dkt. Nos. 37; 38.

The Court has considered the submissions on file and the applicable law, and now issues the following decision which resolves the motions.  Fed. R. Bankr. P. 7052; 9014.

*Facts*

On April 6, 2017, Mr. Mitchell was driving home from his work on a drilling rig in a remote site in Wyoming.  He was allegedly driving in the wrong lane and collided head-on with Mr. Patrick Smith ("Creditor") in Wyoming, causing significant injuries to both Mr. Mitchell and Creditor.  Medical personnel responding to the accident found a bag of methamphetamine on Mr. Mitchell's person, and related drug paraphernalia was discovered in his vehicle after the accident.[2]  Mr. Mitchell was life-flighted to EIRMC where he was treated and Creditor believes he may have been tested and screened for intoxication.

On May 14, 2018, in Wyoming state court, Creditor filed a civil action for personal injuries resulting from Mr. Mitchell's alleged negligence.  Dkt. No. 34 at Ex. 1.

---

[2] Mr. Mitchell has since entered into an agreement in Wyoming by which he agreed to plead guilty to, *inter alia*, a felony for unlawful possession of methamphetamine.  Dkt. No. 24 at Ex. 3.

MEMORANDUM OF DECISION – 2

On August 21, 2018, Mr. Mitchell and his wife, co-debtor Ricky Mitchell, filed a Chapter 7 petition.

### *Analysis and Disposition*

Creditor believes Mr. Mitchell may have been intoxicated at the time of the accident, and under § 523(a)(9), a debt that arises from the "personal injury caused by the debtor's operation of a motor vehicle . . . if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance" is nondischargeable. Creditor wants to conduct Rule 2004 examinations, accompanied with requests for documentation under Rule 9016, to discover facts relating to the possible nondischargeability action. Mr. Mitchell objects. Dkt. Nos. 30, 35.

A.   Motion to Quash Subpoena, Dkt. No. 30

Creditor served a subpoena on EIRMC to conduct a Rule 2004 Examination seeking the following:

> 1) drug and/or alcohol test results for Mr. Mitchell on the day of the accident;
> 2) medical records for Mr. Mitchell containing admissions of drug and/or alcohol use on the day of the accident; and
> 3) documentation of any blood, urine, tissue, or any other samples taken from Mr. Mitchell on the day of the accident, including the chain of custody of such samples.

*1. Standing*

Initially, Creditor challenges Mr. Mitchell's standing to quash the subpoena, contending that only a claim of privilege will grant him standing as a third party. Creditor is correct.

MEMORANDUM OF DECISION – 3

In *United States v. Viltrakis*, 108 F.3d 1159, 1160–61 (9th Cir. 1997), the panel wrote that "courts have regularly held that a defendant or a putative defendant lacks standing to object to a subpoena issued to a nonparty witness." *United States v. Miller*, 425 U.S. 435, 444 (1976); *see also In re Grand Jury Subpoenas Dated December 10, 1987*, 926 F.2d 847, 852 (9th Cir. 1991); *Read v. Teton Springs Golf & Casting Club, LLC,* No. 08-CV-00099, 2010 WL 2697596, at *4 (D. Idaho July 6, 2010).

These decisions are grounded in the principle that the person served with process is the proper party to allege error. The exception to the general rule is when the movant can demonstrate that the information being sought is privileged. "The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." *U.S. Bank Nat'l Ass'n v. James,* 264 F.R.D. 17, 18–19 (D. Me. 2010) (quoting *Windsor v. Martindale,* 175 F.R.D. 665, 668 (D. Colo. 1997)). Mr. Mitchell contends that the information sought by Creditor involves medical records, statements, and test results following the accident, and that he has a privacy interest in that information.

While Mr. Mitchell may well have a privacy interest in the dissemination of his medical records, this does not equate to a legally recognized privilege. Because the underpinning of these discovery efforts is Creditor's hope that his debt might be determined to be nondischargeable, the underlying cause of action is governed by federal law. And unfortunately for Mr. Mitchell, under federal law, there is no physician-patient privilege protecting medical records from discovery. *In re Grand Jury Proceedings*, 867

MEMORANDUM OF DECISION − 4

F. 2d 562, 564 (9th Cir. 1989) (noting the Ninth Circuit's refusal to adopt a physician-patient privilege), *abrogated on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996); *In re Grand Jury Proceedings*, 801 F.2d 1164, 1169 (9th Cir. 1986).  Because a third party's standing to quash a subpoena rests on the assertion of a privilege, Mr. Mitchell does not have proper standing to support his motion.

Mr. Mitchell advances a second argument regarding his standing to challenge the subpoena at issue.  He contends Civil Rule 45(d)(3)(B) permits a person who is "affected by" a subpoena to move to quash.  Mr. Mitchell posits that in order to protect a person who is "affected by" a subpoena but who is not subject to it, that person must have standing to challenge the subpoena.  However, he misapplies Civil Rule 45.  That rule specifically allows for a subpoena to be quashed by someone "affected by" it in the event the subpoena requires: 1) "disclosing a trade secret or other confidential research, development, or commercial information," or 2) "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."  Civil Rule 45(d)(3)(B). Neither of those instances apply here.  Accordingly, Mr. Mitchell's motion to quash the subpoena is denied because he lacks standing to bring it.

If the Court were to consider the motion on its merits, however, Mr. Mitchell would still be unsuccessful.  A subpoena may be quashed for a number of reasons enumerated in the Civil Rules, such as the failure to allow a reasonable time to comply or that it requires a person to comply beyond the geographical limits specified in Civil Rule

MEMORANDUM OF DECISION – 5

45(c).  More pertinent here, a subpoena may be quashed when it "requires disclosure of

privileged or other protected matter, if no exception or waiver applies," or it "subjects a

person to undue burden." See Civil Rule 45(c)(3)(A)(iii)-(iv).  The burden of

demonstrating a subpoena is subject to being quashed or modified is upon the person

moving for relief.  *Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Grp., Inc.*, No. 13-

CV-00064-EJL, 2013 WL 6446704, at *2 (D. Idaho Dec. 9, 2013) (citing 9A *Fed. Prac.

& Proc. Civ.* § 2459 (3d ed. 2013)).  However, the party issuing the subpoena must

demonstrate, in turn, that the information sought is relevant and material to the

allegations and claims at issue in the proceedings.  *Rocky Mountain Med. Mgmt., LLC.*,

2013 WL 6446704 at *2 (citing *Green v. Baca*, 226 F.R.D. 624, 654 (C.D. Cal. 2005)).

Mr. Mitchell argues that the subpoena at issue requires the disclosure of privileged

or other protected matter.  As discussed above, there is no federal doctor-patient privilege

he may claim.  Mr. Mitchell contends, however, that health records fall within the

category of "other protected matter" referred to in Civil Rule 45(d)(3)(A).  He is

incorrect.

Health care records are not the type of "other protected" matter protected by Civil

Rule 45(d)(3)(A)(iii).  Rather, this provision commonly refers to testimony or documents

that, "although not privileged, [are] nevertheless protected from compelled disclosure,

such as attorney work product or trial preparation materials.  These materials are subject

to discovery or disclosure under the more particular provisions of [Civil Rule] 26(b) and

a party may not circumvent these provisions by invocation of the court's subpoena

MEMORANDUM OF DECISION – 6

power." 9 *James Wm. Moore et al., Moore's Federal Practice*, ¶ 45.51[3] (3d ed. 1999).

In contrast, the disclosure of medical records may be compelled when they are relevant to

the claims or defenses in the case and appear reasonably calculated to lead to the

discovery of admissible evidence.[3]  Indeed, a litigant can waive his privacy right in his

medical history by putting that medical history at issue in a case or when it is directly

relevant to the litigation.  *See EEOC v Cheesecake Factory, Inc.*, No. C16-1942JLR,

2017 WL 3887460, *7 (Sept. 6, 2017 W.D. Wash.) (summarizing district court decisions

finding "the right to privacy in medical records is waived when the plaintiff's medical

condition is 'at issue' in the lawsuit.").

In the case at bar, Mr. Mitchell's attempt to discharge his debt to Creditor puts the

applicability of §523(a)(9) at issue, which in turn raises the question of his alleged

intoxication at the time of the accident.  As such, he cannot assert a privacy right in his

medical records as a shield to prevent Creditor from proving intoxication at the time of

the accident, and Civil Rule 45(d)(3)(A) will not protect the information sought here.

Because the Civil Rules do not require Creditor's subpoena to be quashed, the

Court is left to conduct a straightforward analysis of whether the information sought by

the subpoena is relevant and reasonably calculated to lead to the discovery of admissible

---

[3] Relevance, for the purposes of discovery under Civil Rule 26(b)(1), is whether the information is
"reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor
Prods.,* 406 F.3d 625, 635 (9th Cir. 2005).  Although Creditor has not filed an adversary proceeding, the
Court will adjudge the discovery requests in light of Civil Rule 26, which contains the general rules
regarding discovery in federal court.  It is applicable in bankruptcy to adversary proceedings by virtue of
Rule 7026.

MEMORANDUM OF DECISION – 7

evidence, recalling that information need not be admissible to be discoverable.  The Court will consider each of Mr. Mitchell's concerns.

## 2. *Specific Objections*

First, Mr. Mitchell contends that because he believes he was given intravenous fluids and blood after the accident, which may have resulted in contamination, then any test results will not be an accurate representation of his condition at the time of the accident.  Creditor answers Mr. Mitchell's concerns by citing the lack of any evidence that IV fluids and donor blood may contain intoxicating substances.  The Court agrees with Creditor.  There is no evidence before the Court to support the likelihood, other than a theoretical possibility, of contamination which could lead to inaccurate test results. Moreover, the mere possibility of inaccurate results would not preclude their discovery at this juncture, nor would it absolutely affect their admissibility.  Rather, any alleged inaccuracy may instead affect the weight given to the evidence.

Mr. Mitchell next objects to Creditor obtaining statements "by anyone other than Debtor, as such statements are without foundation and hearsay."  See Dkt. No. 30.  He also argues the subpoena is vague as to what constitutes an admission.  The Court is mindful that the case is still in the discovery phase, and as such, is not ruling on the admissibility of any such evidence.  Instead, at this point, the Court considers only whether there is a possibility that the information adduced could lead to the discovery of admissible evidence.

MEMORANDUM OF DECISION − 8

In this instance, the Court does not find the wording of the subpoena to be vague or unclear, as Mr. Mitchell suggests. As to Mr. Mitchell's allegations of hearsay, admissions by party-opponents are an exception to the hearsay rule under Fed. R. Evid. 801(d)(2). Therefore, any such admissions are not absolutely inadmissible under the hearsay rule if the required criteria are met. Furthermore, if Mr. Mitchell commented on his own physical condition following the accident, such comments may be admissible under one or more of the exceptions to the hearsay rule found in Fed. R. Evid. 803, including a present sense impression, an excited utterance, a then-existing statement about his physical condition, a statement made for medical diagnosis or treatment, or a statement contained in a record kept in the ordinary course of business.

Regarding statements made by someone other than Mr. Mitchell, such as a relative or friend, Creditor argues that Fed. R. Evid. 803(4), which governs statements made for medical diagnosis or treatment, permits admission of those types of statements. That rule provides that a statement made for, and is reasonably pertinent to, medical diagnosis or treatment and that describes medical history, past or present symptoms or sensations, their inception, or their general cause, is not excluded by the rule against hearsay. The Court concludes it is possible that any such statements could be admissible if Creditor could prove the circumstances were appropriate for their admission. But again, admission is not the issue at present, and such statements are reasonably calculated to lead to the discovery of admissible evidence.

MEMORANDUM OF DECISION − 9

Lastly, Mr. Mitchell objects to Creditor's request for medical records regarding "blood, urine, tissue, or any other samples" because it is vague and overbroad.  He contends that any samples taken for any reason other than drug or alcohol testing at the time of the accident are irrelevant and their disclosure would invade Mr. Mitchell's privacy.

In response, Creditor argues that, at present, he seeks only to learn whether any such samples were taken on the day of the accident.  He argues that Mr. Mitchell made that information relevant by seeking to discharge Creditor's debt through the bankruptcy case, and that Mr. Mitchell must point to some privilege or privacy to support quashing of the subpoena.  He contends the request is narrowly tailored toward the discovery of information about whether Mr. Mitchell was intoxicated at the time of the accident.

The Court will first consider the impact of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), if any.  HIPAA is the primary federal law passed to ensure an individual's right to privacy over his or her medical records and requires that individually identifiable medical information not be disclosed by covered entities without the consent of the individual unless disclosure is expressly permitted by statute.  45 C.F.R. § 164.502.  HIPAA provides that a covered entity may disclose protected health information in the course of any judicial proceeding "[i]n response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court" if the individual who is the subject of the protected health information that has

MEMORANDUM OF DECISION – 10

been requested has been given notice of the request.  45 C.F.R. § 164.512.[4]  According to

the regulations, EIRMC, as a covered entity that is not a party to the litigation, may

_____

[4]  HIPAA provides, in relevant part:

 (e) Standard: Disclosures for judicial and administrative proceedings.

    (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

        * * * * *

    (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

        (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

        (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

    (iii) For the purposes of paragraph (e)(1)(ii)(A) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

        (A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);

        (B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and

        (C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:

            (1) No objections were filed; or

MEMORANDUM OF DECISION − 11

disclose protected health information in response to a subpoena, discovery request, or

other lawful process if it received documentation indicating that Creditor made

reasonable efforts to ensure that Mr. Mitchell was given sufficient notice of the request.

*Id*.  Notice to Mr. Mitchell is sufficient if Creditor's written notice to him included

enough information about the litigation to permit him to raise an objection with the

Court.  Finally, all objections filed must be resolved and Creditor's request must be

consistent with the Court's resolution of those objections.  *Id.*  If the conditions above

have been met, the regulations do not require a court order to make the disclosure.  *Id.*

The Court finds that each of these requirements have been met, and thus HIPAA will not

bar execution of the subpoena.

    Mr. Mitchell seeks to discharge any debt owed to Creditor, who in turn is

attempting to discover whether that debt may be nondischargeable under § 523(a)(9).  As

such, whether Mr. Mitchell was legally impaired at the time of the accident is directly

relevant.  Moreover, as Creditor stated in his response, at this point he seeks to discover

only whether any samples were taken after the accident, and is not currently asking for

the release of any specific test results.

---

(2) All objections filed by the individual have been resolved by the court
or the administrative tribunal and the disclosures being sought are
consistent with such resolution.

45 C.F.R. § 164.512

MEMORANDUM OF DECISION − 12

In the end, the Court reminds the parties that the case is still in the discovery phase, and questions of admissibility under the rules of evidence are neither ripe nor before the Court at this time. The relevant inquiry is whether the information sought is reasonably calculated to lead to the discovery of admissible evidence. As Mr. Mitchell's condition at the time of the accident is directly at issue, the information sought through the subpoena is relevant and discoverable, and if Mr. Mitchell had standing to move to quash the subpoena, the motion would be denied on the merits by this Court.

B.   Motion for 2004 Examinations, Dkt. No. 34

Creditor seeks the Court's approval to conduct a Rule 2004 examination of Ms. Mitchell, who is the co-debtor in this case, as well as their son Dominic, and Mr. Mitchell's brother, Timber Mitchell. Dkt. No. 34. He also seeks the issuance of document production subpoenas to Sublette EMS and United Fire, the entities that provided first responder services at the scene of the accident; Mr. Mitchell's employer, Nabors; and Ultra Petroleum, the entity that owned the drilling rig Mr. Mitchell worked on.

*1. Legal Standard for Rule 2004 Examinations*

Rule 2004 provides, "[o]n motion of any party in interest, the court may order the examination of any entity." Rule 2004 is the basic discovery device in bankruptcy cases, allowing broad examination relating to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Rule

MEMORANDUM OF DECISION − 13

2004(b).  The courts have concluded that the scope of a Rule 2004 examination is "unfettered and broad" and the rule essentially permits a "fishing expedition."  *In re Mastro*, 585 B.R. 587, 596–97 (9th Cir. BAP 2018) (quoting *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011)); *In re GHR Energy Corp.*, 33 B.R. 451, 453–54 (Bankr. D. Mass 1983).  Moreover, the examination may "extend to third parties who have had dealings with the debtor."  *Mastro*, 585 B.R. at 597 (citing *In re Fin. Corp. of Am.*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990)).

Rule 2004 can be used as a "pre-litigation device to determine whether there are grounds to bring an action to determine a debtor's right to discharge a particular debt."  *In re Kearney*, 590 B.R. 913, 921 (Bankr. D.N.M. 2018) (quoting *In re Corso*, 328 B.R. 375, 383 (E.D.N.Y 2005).  Because a Rule 2004 examination can be used as a pre-litigation device, Creditor is not required to show he would likely prevail in a suit before obtaining the discovery.  *Kearney*, 590 B.R. at 921 (citing *In re Symington*, 209 B.R. 678, 684 (Bankr. D. Md. 1997) (as Rule 2004 examinations are taken pre-litigation, they need not be tied to specific factual allegations, and are subject to fewer objections on grounds of relevance)).

However, the scope of Rule 2004 is not without limits.  It should not be "stray into matters which are not relevant to the basic inquiry."  *Mastro*, 585 B.R. at 597 (quoting *In re Mittco, Inc*., 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984)).  As such, an examination of matters having no relationship to the debtor's affairs and no effect on the administration of his estate is improper.  *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985*); In re*

MEMORANDUM OF DECISION − 14

*Yahweh Center, Inc.*, No. 16-04306-5-JNC, 2017 WL 327473 *2 (Bankr. E.D.N.C. 2017)
("[F]or information sought from third parties, requests must bear some relation 'to the
acts, conduct, or property or to the liabilities and financial condition of the debtor, or to
any matter which may affect the administration of the debtor's estate, or to the debtor's
right to a discharge.'").  Accordingly, Rule 2004 gives the Court discretion to limit
examination as justice requires.  *Kearney*, 590 B.R. at 921.

Under this legal framework, the Court will consider Creditor's specific requests.

2. *Ms. Mitchell*

Mr. Mitchell has claimed that he has very little memory of the two to three years
preceding the accident, including whether he had a cell phone, the names of his co-
workers on the drilling rig, or whether he had been diagnosed or received treatment for an
alleged brain injury.  Creditor opines that Ms. Mitchell would likely have this
information.  Creditor also seeks to learn about the financial condition of the debtor,
including insurance coverage, and it is reasonable that Ms. Mitchell could provide that
information.

The Court will first address the issue of spousal privilege raised by Mr. Mitchell.
The Supreme Court has recognized two privileges that arise from the marital relationship.
The first permits a witness to refuse to testify against his or her spouse.  *United States v.
Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004) (citing *Trammel v. United States*, 445
U.S. 40, 53 (1980)).  The witness spouse alone holds the privilege and may choose to

MEMORANDUM OF DECISION – 15

waive it. *Id.* In this case, the federal bankruptcy code provides the rule of decision[5], and federal common law holds that spousal privilege applies only in criminal proceedings. *See United States v. Yerardi*, 192 F.3d 14, 19 (1st Cir. 1999) ("The privilege is almost always invoked only in criminal proceedings in which one spouse is called to testify against the other, and understandably so since criminal jeopardy is the threat with which the privilege is concerned. And some formulations of the privilege, and dicta in some of the cases, assume that the privilege could never be asserted in a civil case."); *S.E.C. v. Lavin*, 111 F.3d 921, 925 (D.C. Cir. 1997) ("The [privilege against adverse spousal testimony] allows a spouse called as a witness against his or her spouse in a criminal proceeding to refuse to testify."); *United States v. Premises Known as 281 Syosset Woodbury Rd.*, 71 F.3d 1067, 1070 (2d Cir. 1995) ("The adverse spousal testimony privilege has traditionally been limited to criminal cases."); *Nordetek Envtl., Inc. v. RDP Techs., Inc.*, No. CV 09-4714, 2011 WL 13227709, at \*6 (E.D. Pa. Nov. 28, 2011); *Knepp v. United Stone Veneer, LLC.,* 4:06-CV-1018, 2007 WL 2597936 at 3 (D. M.D.

---

[5] While the issue of dischargeability under § 523(a)(9) is exclusively a question of federal law, state law may provide the meaning of some terms that are not defined under federal law, such as "intoxication" and "motor vehicle". *See In re Henney*, 451 B.R. 724, 737-38 (D. W.D. Mich. 2011) ("a federal court applying section 523(a)(9) should adopt the definition of 'intoxication' or 'intoxicated' which is supplied by the relevant State's law."; *Dougherty v. Brackett*, 51 B.R. 987, 989 (Bankr. D. Colo.1985) ("[i]n enacting a statute to apply to the drunk driving laws of fifty different states, Congress could not have incorporated the legal terminology used by each state in defining the various offenses. Therefore, Congress chose the term 'legally intoxicated' and then referred to each state's laws for a definition of that term."); *Schwartz v. Dunn (In re Dunn)*, 203 B.R. 414, 417 n2 (D. E.D. Mich. 1996) ("the interpretation of the Bankruptcy Code is a matter of federal law and state law is not controlling" but state law may supply the definition of "motor vehicle" in a § 523(a)(9) case).

MEMORANDUM OF DECISION − 16

Penn. Sep. 5, 2007) ("the adverse spousal privilege is only applicable in criminal
proceedings").  Thus, Mr. Mitchell may not assert spousal privilege in this civil case.

 The second privilege, called the "marital communications" privilege, provides that
"[c]ommunications between the spouses, privately made, are generally assumed to have
been intended to be confidential, and hence they are privileged ...." *Montgomery*, 384
F.3d at 1056 (citing *Wolfle v. United States*, 291 U.S. 7, 14 (1934)).  It is available in
civil actions.  The privilege (1) extends to words and acts intended to be a
communication; (2) requires a valid marriage; and (3) applies only to confidential
communications, i.e., those not made in the presence of, or likely to be overheard by,
third parties.  *Montgomery*, 384 F.3d at 1056 (citing *United States v. Marashi*, 913 F.2d
724, 729–30 (9th Cir. 1990)); *see also United States v. White*, 974 F.2d 1135, 1138 n. 2
(9th Cir. 1992).  Because this privilege "obstructs the truth-seeking process," the courts
have construed it narrowly.  *Marashi*, 913 F.2d at 730.

 In the case at bar, Creditor seeks information from Ms. Mitchell regarding whether
Mr. Mitchell had a cell phone, the names of his co-workers on the drilling rig, and
whether he had been diagnosed or received treatment for an alleged brain injury.  This
information is relevant to discharge.  None of these communications would likely be
classified as strictly "marital communications," as any or all of them could be
corroborated by a third party.  However, in the event a question is asked of Ms. Mitchell
that fell within this privilege, she could assert the privilege and document it through a

MEMORANDUM OF DECISION − 17

privilege log.  Accordingly, Creditor's motion to have Ms. Mitchell sit for the examination is proper.

Creditor also requests that Ms. Mitchell bring complete copies of insurance policies, including denials of coverage or reservations of rights associated with those policies.  Because the policies may shed light on the potential payment of claims, which reflects the Debtors' financial condition, this is a proper request.  In addition, Creditor requests that the Court enter an order permitting him to issue a subpoena directing Ms. Mitchell to bring Mr. Mitchell's cell phone that he used on or near the date of the accident, along with any documents that may shed light on Mr. Mitchell's activities and/or whereabouts for the 24 hours prior to the time he left for his final hitch[6], including text messages, emails, social media posts, or voicemails.  The Court expresses concern about this request.  First, while cell phone records can be the proper subject of a subpoena, the phone in question does not belong to Ms. Mitchell.  While she can certainly testify about whether or not Mr. Mitchell owns a cell phone and where it is presently located, if she knows, and produce it if she has possession or custody of it, Mr. Mitchell has privacy rights in the contents of the phone.  As the Supreme Court observed in the context of a fourth amendment case:

> The storage capacity of cell phones has several interrelated consequences for privacy.  First, a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—

---

[6]  It is the Court's understanding that the term "hitch" refers to a segment of time during which Mr. Mitchell was required to remain out at the work site, either on shift or off.

MEMORANDUM OF DECISION − 18

that reveal much more in combination than any isolated record.  Second, a
cell phone's capacity allows even just one type of information to convey far
more than previously possible.  The sum of an individual's private life can
be reconstructed through a thousand photographs labeled with dates,
locations, and descriptions; the same cannot be said of a photograph or two
of loved ones tucked into a wallet.  Third, the data on a phone can date back
to the purchase of the phone, or even earlier.  A person might carry in his
pocket a slip of paper reminding him to call Mr. Jones; he would not carry a
record of all his communications with Mr. Jones for the past several
months, as would routinely be kept on a phone.

* * * * *

Although the data stored on a cell phone is distinguished from
physical records by quantity alone, certain types of data are also
qualitatively different.  An Internet search and browsing history, for
example, can be found on an Internet-enabled phone and could reveal an
individual's private interests or concerns—perhaps a search for certain
symptoms of disease, coupled with frequent visits to WebMD.  Data on a
cell phone can also reveal where a person has been.  Historic location
information is a standard feature on many smart phones and can reconstruct
someone's specific movements down to the minute, not only around town
but also within a particular building.

Mobile application software on a cell phone, or "apps," offer a range
of tools for managing detailed information about all aspects of a person's
life.  There are apps for Democratic Party news and Republican Party news;
apps for alcohol, drug, and gambling addictions; apps for sharing prayer
requests; apps for tracking pregnancy symptoms; apps for planning your
budget; apps for every conceivable hobby or pastime; apps for improving
your romantic life.  There are popular apps for buying or selling just about
anything, and the records of such transactions may be accessible on the
phone indefinitely.  There are over a million apps available in each of the
two major app stores; the phrase "there's an app for that" is now part of the
popular lexicon.  The average smart phone user has installed 33 apps,
which together can form a revealing montage of the user's life.

*Riley v. California*, 573 U.S. 373, 394−96 (2014).  With these privacy concerns in mind,

Mr. Mitchell must be permitted to limit exposure of any personal information thereon

which is unrelated to the instant case, and to ask for redactions when applicable, and

Creditor has agreed to place limits on a forensic download of Mr. Mitchell's phone by

MEMORANDUM OF DECISION − 19

either sending the download to Mr. Mitchell's counsel first, who could withhold privileged material, or the parties could agree on a protective order covering this information. Dkt. No. 36 at 5. The Court agrees that either of these methods should be sufficient to ensure Mr. Mitchell's privacy.

As for information in Ms. Mitchell's possession concerning Mr. Mitchell's whereabouts for the twenty-four hours prior to leaving for the final hitch, including text messages, emails, social media posts, or voicemails, those may be properly subpoenaed as they are relevant to the inquiry at hand. Ms. Mitchell may likewise request redaction on privacy grounds or assert spousal communication privilege, when applicable, and maintain an appropriate log.

*3. Dominic Mitchell*

Dominic Mitchell is the Debtors' son. Mr. Mitchell claims Dominic saw certain items Mr. Mitchell was storing for a friend, and can corroborate his story of how the methamphetamine came into his possession. Creditor seeks to conduct a Rule 2004 examination of Dominic, as well as to have Dominic produce Mr. Mitchell's cell phone, as well as any documents that may shed light on Mr. Mitchell's activities and/or whereabouts for the twenty-four hours prior to leaving for his final hitch, including text messages, emails, social media posts, or voicemails. As with Ms. Mitchell, the Court holds that the Rule 2004 examination is proper, as is the production of the cell phone, with the same privacy protection measures as discussed above.

MEMORANDUM OF DECISION − 20

### 4. *Timber Mitchell*

Timber Mitchell was the individual who apparently retrieved Mr. Mitchell's

possessions following the accident.  Creditor is particularly interested in whether a cell

phone was among the items Timber picked up.  He seeks to examine Timber about what

he retrieved, as well as to produce the phone as well as any documents that may shed

light on Mr. Mitchell's activities and/or whereabouts for the twenty-four hours prior to

leaving for the final hitch, again including text messages, emails, social media posts, or

voicemails.  Again, the Court finds that the Rule 2004 examination is proper, because it

may lead to the discovery of admissible evidence, and production of the cell phone is

appropriate if it is in Timber's possession, again subject to the same procedures to protect

individual privacy concerns.

### 5. *United Fire and Sublette EMS*

Because Mr. Mitchell has postulated the possibility that the blood or fluids he

received may have been contaminated, Creditor seeks to gather information from the first

responders who aided Mr. Mitchell immediately after the accident.  Specifically, he seeks

medical records or documentation reflecting the amount of blood or fluid Mr. Mitchell

received, as well as its source and the possibility of contamination, as well as

photographic evidence, including video, of the blood being administered to Mr. Mitchell.

Creditor further seeks any medical records in their possession which indicate whether Mr.

Mitchell may have been intoxicated at the time of the accident.

MEMORANDUM OF DECISION − 21

Mr. Mitchell does not object to these discovery requests, with the exception of records indicating he "may have been intoxicated" at the time of the accident. The Court agrees that this latter request is vague and invites speculation. Otherwise, the Court finds both the Rule 2004 examination and document production requests to be proper.

### 6. *Nabors and Ultra Petroleum*

Nabors is Mr. Mitchell's employer and Ultra Petroleum is the company that owns the drilling rig Mr. Mitchell was working at during the time of the accident. Creditor contends the employer would know the names of Mr. Mitchell's co-workers, as would Ultra's "company man" on site. Specifically, Creditor believes the co-workers may know about Mr. Mitchell's personal habits, including alcohol or drug use. Nabors and Ultra would also know whether the companies have a drug testing policy, and any results therefrom. His employer would also know the hours Mr. Mitchell worked and specific work duties, in case fatigue was a factor in the accident, and documents or communications that reflect possession or consumption of intoxicating substances at the job site, including documents regarding Mr. Mitchell's work performance. Nabors and Ultra would also know whether a worker's compensation claim has been filed. Finally, Creditor is entitled to examine Nabors and Ultra about the specific location of the rig on which Mr. Mitchell was working on the day of the accident, as well as documents related to any internal investigation by the company regarding the accident.

Mr. Mitchell objects to most of these requests either on the basis of relevance or scope, arguing that the period for which Creditor seeks the information is too broad.

MEMORANDUM OF DECISION – 22

However, the Court finds the requests fall within the grounds for a Rule 2004 examination and subpoena, and it is for Nabors and Ultra to move to quash the subpoenas on the grounds that they are unduly burdensome.

### Conclusion

In summary, the Court holds that Mr. Mitchell does not have standing to challenge the subpoena issued to EIRMC.  Moreover, if he did have standing, the specific objections to the subpoena he raised are either unfounded or overcome by the breadth of the general rule on discovery, the rules of evidence, and/or the fact that Mr. Mitchell placed these facts at issue by seeking to discharge his debt to Creditor.  The Court also finds that the subpoena to EIRMC does not suffer from vagueness.

Regarding the 2004 examination of Ms. Mitchell, the Court concludes that Mr. Mitchell may not assert the spousal privilege, but that the "marital communications" privilege may be applicable if the criteria are met.  While it does not appear to bar the examination of Ms. Mitchell at this point, if questions are asked to which that privilege may be asserted, then a privilege log should be maintained.  The Court further concludes that the production requests are proper, but because Mr. Mitchell has privacy rights in the contents of his cell phone, if he had one at the time of the accident, then the parties should agree on how to place limits on any forensic download conducted.

The Court concludes that the proposed Rule 2004 examinations and production requests of Dominic Mitchell, Timber Mitchell, Nabors, and Ultra Petroleum are proper.  Finally, the Court finds that the proposed Rule 2004 examinations and production

MEMORANDUM OF DECISION – 23

requests of United Fire and Sublette EMS are also proper, except the request to produce records which indicate whether Mr. Mitchell "may have been" intoxicated at the time of the accident, as this request is vague and invites speculation.

Creditor and Mr. Mitchell shall agree upon the form of a proposed order memorializing the Court's decision.  This Order shall include their agreement regarding the limits on any download of the information contained in the cell phone records.

DATED:  March 5, 2019

_____

JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION − 24